AO 106 (Rev. 04/10) Application for a Search Warrant  RAS

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
OCT 31 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.  **19MJ4846**
GPS Tracking Device with SIM Card number )
8952020018 610576128F )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952 & 960 | Importation of a Controlled Substance |

The application is based on these facts:

See attached Affidavit of HSI Special Agent Lauritz Austensen

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Lauritz Austensen, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/30/19

*Judge's signature*

City and state: San Diego, CA         Hon. Barbara L. Major, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Lauritz Austensen, Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), having been duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit is made in support of an application for a warrant to search a GPS Tracking Device with SIM Card number 8952020018 610576128F, as described in Attachment A (the **Target Device**), and seize evidence of violations of federal law, namely 21 U.S.C. §§ 952 and 960 as more particularly described in Attachment B. This search supports an investigation and prosecution of Henry ONOFRE, who is charged with committing one or more of the crimes mentioned above. A factual explanation supporting probable cause follows.

2. The **Target Device** was found attached to a 2008 Hyundai Santa Fe that ONOFRE drove into the San Ysidro, California, Port of Entry in San Diego, California on May 22, 2019. The **Target Device** is currently stored as evidence at the HSI evidence vault at 2297 Niels Bohr Court, San Diego, California 92154.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or

1

other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am also a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

6. I have been a sworn federal agent for approximately 14 years, authorized to investigate violations of United States laws, and to execute warrants issued under the authority of the United States. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI), who is assigned to the San Ysidro office under the Special Agent in Charge in the San Diego office. I have been employed by HSI since 2016. As part of my daily duties as an HSI agent, I investigate criminal violations relating to narcotics smuggling. I have received training from the Federal Law Enforcement Training Center and other law enforcement agencies in the area of narcotics smuggling. I have participated in dozens of narcotics smuggling investigations. I am in routine contact with experts in the field of narcotics. Prior to my employment as a Special Agent with HSI, I was employed as a Deputy United States Marshal/Criminal Investigator with the United States Marshals Service (USMS) in the Southern District of California. Prior to my employment with USMS, I was employed as a Special Agent with the United States Diplomatic Security Service. In preparation for this affidavit,

I have discussed the facts of this case with other law enforcement agents/officers within HSI and other agencies

7. Through training and experience, I have become familiar with narcotics trafficking techniques and the means used by narcotics traffickers to store and retrieve information pertinent to their criminal activities. Based on my training and experience, as well as my consultations with other law enforcement personnel, I have learned that drug traffickers commonly use electronic devices such as cellular telephones, computers, and GPS devices to store names, telephone numbers, records, drug ledgers, location data, and other information pertaining to drug trafficking activity.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug smugglers and traffickers will use GPS devices because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

   b. Drug smugglers and traffickers and their coconspirators will use GPS devices because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations; and

   c. Drug smugglers and traffickers will use GPS devices to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

9. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data on electronic devices. Depending on the device, such data can include user identity, location, phone numbers, network authorization data, personal security keys, and IP addresses. Much of the evidence

3

generated by a smuggler's use of a GPS tracker would likely be stored on any SIM Card that has been utilized in connection with that device.

10. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I have learned that GPS devices can and often do contain electronic records, including location data and telephone numbers or identifying information for individuals accessing GPS devices directly or remotely through phones and/or computers. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the GPS device. Specifically, I have learned based upon my training, education, and experience investigating drug smuggling and trafficking conspiracies that searches of GPS devices sometimes yields evidence:

    a. Tending to indicate efforts to import methamphetamine, or other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute methamphetamine, or other federally controlled substances within the United States;

    b. Tending to identify coconspirators, criminal associates, or others involved in importation of methamphetamine, or other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine, or other federally controlled substances within the United States;

    c. Tending to identify travel to or presence at locations involved in the importation of methamphetamine, or other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine, or other federally controlled substances within the United States, such as stash houses, load houses, or delivery points; and/or

    d. Tending to identify the user of, or persons with control over or access to, the GPS device.

11. Based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I have learned that drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several months. This planning sometimes includes the use of GPS devices.

## FACTS SUPPORTING PROBABLE CAUSE

12. On May 22, 2019, at approximately 1:26 a.m., Henry Onofre applied for entry into the United States through vehicle lane no. 23 at the San Ysidro, California, port of entry (SYSPOE) as the driver, registered owner, and sole occupant of a 2008 white Hyundai Santa Fe. Onofre provided his U.S. Passport to U.S. Customs and Border Protection (CBP) Officer N. Anderson. Onofre stated he was going to San Diego and provided two negative customs declarations. Based on a computer generated referral, Onofre and his vehicle were referred to secondary inspection.

13. While the vehicle was being examined in secondary inspection, CBP Officer J. Cancel (the assigned Z-portal imaging operator) noticed anomalies in the quarter panels of the vehicle. He relayed his findings and secured the vehicle. Upon closer inspection by Off. E. Boyle, a total of 19 white, square packages wrapped in tape were extracted from the rear quarter panels of the vehicle. The 19 packages weighed approximately 11.86 kilograms (26.15 pounds) and field-tested positive for the properties of methamphetamine, a schedule II controlled substance.

14. Onofre was placed under arrest. Onofre was further advised of his *Miranda* rights and elected to make a statement. He denied knowledge of the

narcotics. He further stated that he was heading to work on the day of his arrest and that he recently had a flat tire replaced at a mechanic shop in Mexico.

15. The **Target Device** was discovered in the 2008 Hyundai Santa Fe on August 29, 2019 during an inspection by a defense vehicle witness.

16. Based upon my experience and investigation in this case, I believe that ONOFRE, as well as other persons as yet unknown, were involved in the importation of narcotics. Based upon my experience and training, and in consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I also believe ONOFRE and others used the **Target Device** to coordinate with co-conspirators regarding the importation and delivery of the controlled substances, and to otherwise further the conspiracy both inside and outside the United States. There is also probable cause to believe that electronic records, including location data and telephone numbers or identifying information for individuals accessing the **Target Device** directly or remotely through phones and/or computers are stored in the memory of the **Target Device**, which may identify other persons involved in drug-trafficking activities.

17. I have learned that drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Based on my training and experience, individuals such as ONOFRE will attempt to minimize the amount of time they were involved in their smuggling activities and often times are actually involved for weeks and months longer than they claimed to

be involved. I respectfully request permission to search **Target Device** for data beginning on February 22, 2019, up to and including May 22, 2019.

## METHODOLOGY

18. It is not possible to determine, merely by knowing a GPS device's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. GPS devices today can have functions such as full address books and can be mini-computers. An increasing number of GPS devices now allow users to access them remotely with computers or with a cellular phone and remotely erase all of the data contained on the device. For that reason, the device may only be powered in a secure environment. Many GPS devices do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some GPS device models using forensic hardware and software. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and its memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## CONCLUSION

21. Based on all of the facts and circumstances described above, there is probable cause to conclude that ONOFRE used the **Target Device** to facilitate violations of Title 21, United States Code, Section(s) 952 and 960.

22. Because the **Target Device** was seized from inside the vehicle during the investigation of ONOFRE's smuggling activities and has been securely stored, there is also probable cause to believe that evidence of the illegal activities committed by ONOFRE, as described in Attachment B, continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from February 22, 2019 through May 22, 2019.

23. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Lauritz Austensen, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 30th day of October, 2019.

_____
HON. BARBARA L. MAJOR
United States Magistrate Judge

8

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The property is to be searched is the GPS Tracking Device with SIM Card number 8952020018 610576128F, which was found behind the dashboard area of a 2008 Hyundai Santa Fe bearing California plate number 8JCR057 that ONOFRE drove into the United States on May 22, 2019 (the **Target Device**). The **Target Device** is currently in the possession of Homeland Security Investigations, which is located at 2255 Niels Bohr Court, San Diego, CA 92154, within the Southern District of California.

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in **Attachment A** includes the search of SIM cards, disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Device** for evidence described below, between the dates of February 22, 2019, up to and including May 22, 2019. The seizure and search of the **Target Device** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Device** will be location data and identifying information of individuals accessing the device, including telephone numbers and identifying information for phones and/or computers remotely accessing the device:

a. Tending to indicate efforts to import methamphetamine, or other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute methamphetamine, or other federally controlled substances within the United States;

b. Tending to identify coconspirators, criminal associates, or others involved in importation of methamphetamine, or other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine, or other federally controlled substances within the United States;

c. Tending to identify travel to or presence at locations involved in the importation of methamphetamine, or other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine, or other federally controlled substances within the United States, such as stash houses, load houses, or delivery points; and/or

      d. Tending to identify the user of, or persons with control over or access to, the GPS device;

**which are evidence of violations of Title 21, United States Code, §§ 952 and 960.**